IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:15-CR-00010-M

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DESIREE BOLYARD,<br><br>    Defendant. | ORDER |

    This matter comes before the court on Defendant Desiree Bolyard's ("Bolyard") Motion to Terminate Supervised Release or, in the Alternative, to Modify Conditions [DE 44]. Bolyard seeks an order terminating her supervised release pursuant to 18 U.S.C. § 3583(e)(1), and argues that such termination is warranted by her compliant conduct and in the interest of justice. Alternatively, Bolyard requests that the court modify certain conditions of her supervised release pursuant to 18 U.S.C. § 3583(d), arguing that they are not reasonably related to the purposes of her sentencing and involve a greater deprivation of liberty than necessary to achieve the goals of supervision.

    The United States counters that Bolyard's motion should be denied because she has not demonstrated any new or unforeseen circumstance or the factors set forth in § 3553(a) justify early termination of supervision. Also, the government asserts that the court should not modify Bolyard's internet restrictions, because they are reasonably related to the underlying offense and reasonably necessary to prevent Bolyard from offending again.

    The court concludes the Bolyard has failed to demonstrate that her supervised release should be terminated at this time. In addition, while the court finds Bolyard has demonstrated that

the "association with minors" restriction should be modified, she provides insufficient information for the court to determine whether the "internet-use" restriction should be modified. Thus, the motion is denied in part, granted in part, and denied without prejudice in part.

I.  **Background**

On March 3, 2015, Bolyard pled guilty to a Criminal Information alleging that Bolyard "travel[ed] in interstate and foreign commerce for the purpose of engaging in an any illicit sexual conduct, as defined in Title 18, United States Code, Sections 2423(f), with another person, in violation of Title 18, United States Code, Section 2423(b)" (*see* DE 6, 10, 13), based on the following allegations. In February 2014, the Naval Criminal Investigative Service (NCIS) launched an investigation related to sexual misconduct involving Bolyard and a 13-year-old female ("JH"). DE 19 at 3. Bolyard, age 35, was the mother of JH's boyfriend and a former employee of the school attended by both JH and her son at Camp Lester, Okinawa, during the 2012-13 school year. *Id*. The investigation revealed that Bolyard and JH met in approximately February 2013, and Bolyard engaged in inappropriate sexual contact and communication via smartphone with JH from at least July 2013 through February 2014, including after Bolyard moved to North Carolina due to her husband's transfer to Camp Lejeune in July 2013. *Id*. at 3-5. This communication included sexually explicit photos and videos exchanged between Bolyard and JH. *Id*.

Specifically, on February 11, 2014, NCIS located Bolyard in Okinawa and interviewed her. Bolyard admitted that she was in Okinawa to visit JH, and that she had snuck into JH's bedroom one night to engage in sexual conduct. *Id*. Agents also interviewed JH and learned that Bolyard snuck into JH's bedroom on February 7, 2014, during which they kissed each other for two hours, and that they had planned to meet secretly on February 14, 2014, during which they planned "to remove their clothing" and "kiss each other all over." *Id*. Agents searched Bolyard's luggage and

2

cellular telephone and JH's cellular telephone and discovered that Bolyard and JH had created and exchanged multiple sexually explicit photos and videos of themselves. *Id.*

On June 9, 2015, Bolyard was sentenced to sixty months in prison followed by a ten-year term of supervised release. DE 31, 33. The court imposed multiple conditions on Bolyard's release, including restricting her associations and internet use. J., DE 33. Bolyard states that she was released from prison in July 2019 and asserts that she has been compliant with all conditions of her supervision since her release. Mot., DE 44 ¶ 3. These conditions include prohibition (without the probation officer's permission) from any form of unsupervised communication with a minor, loitering within 1,000 feet of any area where minors frequently congregate, and possessing or purchasing any device that can be linked to the internet. DE 33 at 5. Bolyard must also consent to warrantless or unannounced searches and the installation of computer monitoring software by a U.S. Probation Officer. *Id.*

Bolyard contends that certain of these conditions place unnecessary burdens on her ability to work and live. Mot, ¶ 6. In particular, Bolyard argues that she is unable to advance in her career because of the restriction that prevents her from accessing computer systems. *Id.* ¶ 11. Additionally, Bolyard asserts that the condition restricting her from unsupervised contact with minors creates unnecessary barriers to a normal relationship with her son and stepdaughter. *Id.* ¶ 9. Bolyard now moves this court to terminate the supervised release or, alternatively, modify the conditions of the supervised release to enable her reassimilation into society. *Id.* ¶ 12.

## II. Legal Standards

In determining a particular sentence to be imposed, the court must consider the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to afford adequate deterrence to criminal conduct, the need to protect the public

from further crimes of the defendant, and the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a). In addition, under 18 U.S.C. § 3583(d), the court may order any condition of supervised release so long as the condition "(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D); and (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)." 18 U.S.C. § 3583(d).

The court may, after considering the § 3553(a) factors, "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). The decision whether to terminate supervised release is left to the court's discretion. *See United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999).

Furthermore, courts may modify or reduce the conditions of supervised release any time prior to the expiration of the of the term of supervised release under 18 U.S.C. § 3583(e)(2). Typically, defendants may seek modification or reduction of conditions based only on "new, unforeseen or changed legal or factual circumstances, including those that go to the legality of the sentence," because challenges to conditions that existed at the time of the original sentencing are properly raised only on direct appeal. *United States v. Morris*, 37 F.4th 971, 976 (4th Cir. 2022) (citing *United States v. McLeod*, 972 F.3d 637, 644 (4th Cir. 2020)). Relevant to this case, however, the Fourth Circuit has held that district courts should consider challenges to internet-use conditions because recent Supreme Court and Fourth Circuit opinions have "created 'new,

4

unforeseen, or changed legal ... circumstances.'" *Id*. at 977. Also, a party may seek modification or reduction based on new factual circumstances that were not present at the time of the original sentencing. *Id*.

### III. Discussion

#### A. The court will not terminate Bolyard's supervised release.

Courts have discretion to grant early termination of supervised release, even when the conditions for termination are met. *Folks v. United States*, 733 F. Supp. 2d 649, 651 (M.D.N.C. 2010). In deciding whether to terminate a term of supervised release, the court must first consider whether the defendant's conduct warrants early termination. 18 U.S.C. § 3583(e)(1). "Circumstances that justify early discharge have included exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals." *Folks*, F. Supp. 2d at 651 (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). Full compliance with the conditions of supervised release are expected of the defendant. *Id*. at 652. Thus, compliant and apparently unblemished conduct, while commendable, is not enough on its own to warrant early termination. *Id*.

Here, Bolyard asserts that she has been compliant with all conditions since her release from prison in 2019. Bolyard claims to have complied with all mental health recommendations from her probation officer and has never received a violation for not following the terms of her release. Even if these claims were true, her compliant conduct alone does not constitute sufficient grounds for early termination. The terms of Bolyard's supervision were established to hold her accountable for her offenses, deter her from committing further offenses of the same nature, and protect those in the community around her. Bolyard is expected to comply with the conditions of her release for the entirety of its duration. Mere compliance for less than half of a ten-year release period does

5

not qualify as exceptionally good behavior that renders the release conditions too harsh or inappropriately tailored to meet the goals of § 3553(a).

Notably, the U.S. Probation Office disagrees that Bolyard has been fully compliant under supervision and opposes termination from supervision at this time. Resp., DE 46 at 6. Deputy Chief Probation Officer Van Freeman states that Bolyard has neither finished nor cooperated with all of her sex offender treatment requirements and has had trouble staying at her approved residence, away from the unsupervised presence of children. *Id*. If Bolyard has, in fact, failed to comply with these terms of her release, then she would not have met the minimum requirement that her conduct warrant early termination. Nevertheless, even if Bolyard has been fully compliant, as explained above, her conduct alone would not justify early termination. *See Pregent*, 190 F.3d at 282-83 (while a conduct-based inquiry into the necessity for supervision after the defendant has served one full year on supervised release is allowed, the statute is not exclusively limited to considerations of conduct); *see also* 18 U.S.C. § 3583(e)(1).

Bolyard contends that her steady employment, remarriage and relationship with her stepdaughter, and a complete lack of substance abuse problems and antisocial behaviors support a finding that she has engaged in exceptionally good behavior that makes her all of her conditions seem too harsh or inappropriately tailored. The court disagrees. While the court certainly commends Bolyard for her honesty in informing others of her past crime, her success at her job, and her efforts to form stable, loving relationships (and encourages her to continue to do so), the court also finds that these efforts do not render *all* of her current conditions harsh or inappropriate. For example, the letter from Bolyard's employer, while complimentary, acknowledged that "in time" Bolyard might be able "to move inside the office & into the sales side of our business." DE 44-2 at 2. The employer expressed no urgency nor even a certain date by which he may like to

6

promote Bolyard. Furthermore, the letters from Bolyard's son and stepdaughter express their love for her and their desire that she be released from the requirement that her time spent with minors be supervised; however, the court notes particularly that neither her stepdaughter's mother nor father wrote letters or otherwise demonstrated support for Bolyard's early release from all conditions. The court finds that Bolyard's demonstrated conduct is insufficient to warrant early termination from supervision.

As set forth above, a court may terminate supervised release if it also finds that justice warrants termination. *Pregent*, 190 F.3d at 283. The use of the conjunction "and" in the language of the statute indicates that an early termination must be warranted by *both* the defendant's behavior and by the interest of justice. *Id.* The phrase "interest of justice" gives the court latitude to consider a broad range of factors that serve to protect and promote the purposes of the release, such as the criminal background of the defendant, the severity of the original offense, and any threat posed to the public. *See id.* (citing the factors in 18 U.S.C. § 3553(a)). If, in weighing these factors, the court finds that supervision is needed to protect the interests of justice, the court must deny the termination request. *See id.*

Although the court need not proceed to do so here, it finds that justice does not warrant an early termination of supervision. For example, Bolyard's pattern of criminal behavior is concerning. The conduct she engaged in is serious in nature and dangerous to minor victims. Not only did she create and exchange sexual photographs and videos with JH, she also went to great lengths to engage in sexual conduct with JH by traveling from North Carolina to Okinawa, sneaking into JH's bedroom while her parents were asleep, and planning secret meetings with JH elsewhere. It is reasonable to assume that a thirty-five-year-old adult would understand the unlawfulness of engaging in sexual contact with a minor and refrain from such behavior. However,

7

Bolyard demonstrated a distinct lack of control by disregarding that risk and repeatedly pursuing JH. The conditions of Bolyard's release, including that she complete mental health and sex offender treatment, register as a sex offender, and refrain from possessing child pornography and from loitering where children congregate (including schools), were imposed in an effort to prohibit Bolyard from repeating such criminal behavior and to safeguard the community. The court must uphold these conditions to meet § 3553(a) goals. Therefore, Bolyard's history and characteristics and the nature of her offense, combined with the need for deterrence and protection of the public, lead to the conclusion that the interest of justice would best be served by continuing Bolyard on supervised release. This ensures a more appropriate period during which she may continue treatment while being deterred from recommitting a serious crime, and protects the community from any criminal behavior.

B. The court will modify one condition but not the other (yet).

Upon consideration of the factors listed in 18 U.S.C. § 3553(a), district courts are permitted to "modify, reduce, or enlarge the conditions of a supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2). Bolyard asks the court to remove or modify her restrictions on associating with minors and using the internet. The court agrees that the association restriction may be modified, but finds that insufficient information exists to allow the court to determine whether the internet-use restriction should be modified.

1. *Restriction on association with minors*

Bolyard argues that the court may consider modifying the association restriction because her remarriage and relationship with a new stepdaughter constitute "new factual circumstances." The United States lodges no objection nor position on this matter. The court agrees that Bolyard's

8

recent marriage to her partner, who has a teenage daughter, constitutes "new, unforeseen or changed ... factual circumstances" that may be considered under § 3583(e)(2). *See Morris*, 37 F.4th at 976. Here, Bolyard requests that the following condition be removed or modified:

> The defendant shall not associate or have verbal, written, telephonic, or electronic communications with any person under the age of eighteen (18), except: (1) in the presence of the parent or legal guardian of said minor; (2) on the condition that the defendant notifies the parent or legal guardian of the defendant's conviction or prior history; and (3) with specific, written approval from the U.S. Probation Officer. This provision does not encompass persons under the age of 18 with whom the defendant must deal in order to obtain ordinary and usual commercial services (e.g., servers, cashiers, ticket vendors, etc.).

J., DE 33 at 4.

A condition of supervised release must be reasonably related to the following sentencing factors: the nature and circumstances of the offense and the history and characteristics of the defendant, and the need for the sentence imposed to afford adequate deterrence of criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with training, medical care, or correctional treatment. *See* 18 U.S.C. § 3583(d)(1) (referencing the factors in §§ 3553(a)(1) and (a)(2)(B)-(D)). Conditions of supervised release must also "involve no greater deprivation of liberty than is reasonably necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3583(d).

In this case, while evidence existed at the time of sentencing in June 2015 supporting Bolyard's prohibition from engaging in contact with any and all minors without the presence of another adult, the court finds circumstances have changed. Bolyard has demonstrated that she no longer needs supervision to associate with her son and stepdaughter, who are both minors. Bolyard's family therapist evaluated Bolyard for "safety measures" and has found that her son and stepdaughter "will be completely safe with [Bolyard]." DE 44-1 at 2. In addition, letters of support from Bolyard's sister-in-law and father-in-law, as well as letters from her son and stepdaughter, convince the court that Bolyard's family desires she be removed from the restriction and that

9

Bolyard will maintain safe and loving relationships with her son and stepdaughter. Therefore, the court will grant Defendant's motion in this respect and modify the condition to add: "This condition shall not apply with respect to Bolyard's son, Waylon S. Bolyard, or stepdaughter, Peyton A. Santiago." The court finds that, as modified, the restriction is reasonably related to the § 3553(a) factors and imposes no greater deprivation than necessary to achieve the purposes of Bolyard's sentence.

2. *Restriction on use of electronic devices that can be linked to the internet*

Bolyard also requests that the court modify or remove the following condition:

The defendant shall not use, purchase, possess, procure, or otherwise obtain any computer or electronic device that can be linked to any computer networks, bulletin boards, internet, internet service providers, or exchange formats involving computers unless approved by the U.S. Probation Officer.

J., DE 33 at 5.[1] The court finds that Bolyard's request is premature and not fully supported by the record.

Although a court's reasoning in establishing conditions of supervised release may come across as intuitive or common sense, it must be supported by individualized evidence to show that the conditions imposed on the defendant are reasonably related to the offense. *United States v. Ellis*, 984 F.3d 1092, 1100 (4th Cir. 2021). When it comes to an outright ban on a defendant's right to internet access, the court must require some evidence linking the offense or criminal history to the unlawful use of the internet for the condition to be sustained. *See id.*

Here, Bolyard contends that the conditions of her release prohibiting her from unauthorized internet use are not reasonably related to the offense she committed and, thus, are disproportionately severe. However, much of Bolyard's criminal conduct derived from internet

---

[1] Bolyard also lists search conditions and a prohibition from using "computer-based counter forensic tools" as conditions she seeks to modify (*see* DE 44 at 4); however, the court finds she has provided insufficient argument and evidence to support modification of these conditions.

10

use. The communication and exchange of sexually explicit photos and videos between Bolyard and JH took place over smartphone applications. In fact, Bolyard's crime, travelling with the intent to engage in illegal sexual conduct, was planned via the internet. Therefore, the condition barring Bolyard from unauthorized internet access is supported by clear evidence that she used the internet to commit her criminal conduct.

Conditions of supervised release must also "involve no greater deprivation of liberty than is reasonably necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3583(d). "Imposing conditions that fail to comply with these requirements is an abuse of discretion and grounds for vacating the conditions." *Ellis*, 984 F.3d at 1098. Relevant here, evidence of sexual contact with a minor, coupled with evidence the internet was used to aid such offense, justifies a complete ban on internet use. *See United States v. Hamilton*, 986 F.3d 413, 422-23 (4th Cir. 2021) (rejecting a challenge to an internet restriction because the defendant's crime involved using social media to entice minors to perform sexual acts). The court may prohibit a defendant from engaging in a specified occupation, business, or profession if it is determined that (1) a reasonably direct relationship exists between the defendant's occupation and the conduct relevant to the offense; and (2) such a restriction is reasonably necessary to protect the public. *Id*. at 419. When it comes to defendants on supervised release for child sexual misconduct charges, the Fourth Circuit has held that employment restrictions are justified when the defendant's job involves regular contact with minors or provides defendants with "ready opportunity to ply [their] proclivities for child sexual abuse." *See id*. at 420.

The Supreme Court has held that although "the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information," to deny

11

an offender access to social media altogether prevents the user from engaging in their legitimate exercise of First Amendment rights. *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017). Convicted criminals may receive legitimate benefits from the internet in "seek[ing] to reform themselves and pursue lawful and rewarding lives." *Id*. at 108. Given the centrality of the internet in modern life, a condition of release prohibiting possession of any electronic device that could be connected to the internet acts as an extreme restriction on an offender's First Amendment rights. *See United States v. Wroblewski*, 781 F. App'x 158, 163 (4th Cir. 2019). The district court is responsible for providing an explanation as to why such an extreme condition is warranted. *Id*.

Generally, a total internet ban in non-contact child sex offenses sweeps too broadly over an offender's First Amendment rights, but when the offender has sexual contact with a minor, a ban may be appropriate. *See Morris*, 37 F.4th at 977. "*Ellis* established that non-contact sex offenses can't justify an internet ban absent a connection between the ban and the offender's conduct." *Id*. "And *Hamilton* clarified that using the internet to locate victims coupled with evidence of a contact offense (even without a conviction) may support an internet ban." *Id*.

Here, Bolyard argues that the internet ban involves a greater deprivation of liberty than necessary, because she is unable to be promoted to an office position at her place of employment given the required use of a computer that comes with the position, and it would be impractical to seek the approval of the probation office every time she needed internet access. Thus, the new position seemingly would expose Bolyard to unsupervised access to computer systems and the internet. These are the same tools on which Bolyard relied to plan and commit her criminal conduct. Providing these resources to Bolyard at this time, when she has completed less than half of her supervised term and has not successfully completed sex offender treatment, would present

12

Bolyard with a ready opportunity to repeat her offenses, which is precisely what the court in *Hamilton* set out to prevent. *See id.*

An unpublished case in this circuit, *United States v. Ponzini*, is closely analogous to the case at bar and provides guidance on assessing the deprivation an internet ban has on a defendant. *See United States v. Ponzini*, No. 3:02CR423-JRS, 2007 WL 6097267 (E.D. Va. Dec. 4, 2007), *aff'd*, 278 F. App'x 242 (4th Cir. 2008). In *Ponzini*, the defendant was arrested while in the process of checking into a hotel where he planned to meet an individual, whom he thought was a thirteen-year-old girl, to engage in sexual conduct. *Id.* at *1. The defendant communicated with his target via an online chat room where he organized the plan for the two of them to meet. *Id.* As part of his sentence, the defendant was restricted from access to online computer services without permission from his probation officer, and he later complained that this restriction imposed a greater deprivation than was reasonably necessary. *Id.* at *2. The court found that when a condition allows for a defendant to use the internet with the approval of a probation officer, the deprivation is not considered greater than reasonably necessary, since it is not a complete ban. *Id.* at *3. In addition, when a defendant is convicted of using the internet to engage in hands-on sexual contact with a minor, as opposed to the crime of viewing child pornography, the condition prohibiting internet access is less likely to be considered a greater deprivation than necessary. *See id.* The court denied Ponzini's request to modify the internet-use restriction. *Id.*

Here, when law enforcement discovered that Bolyard and JH had been involved in an inappropriate relationship, they found that Bolyard had been communicating with JH via the internet and planned to visit her. In other words, Bolyard had gone beyond the mere possession of inappropriate images of JH and used the internet to plan an opportunity to engage in sexual acts with a minor. These facts are strikingly similar to those in *Ponzini* and the court finds the opinion

13

persuasive. Applying *Ponzini*, *Hamilton*, and *Morris*, the court finds that the deprivation placed on Bolyard by the internet-use restriction is, at this time, reasonably necessary to achieve the purposes of the original sentencing.

Importantly, the terms of Bolyard's supervised release do not consist of a complete ban on internet use, given that she is still permitted to purchase, possess, and use computers if she has approval from her probation officer. Because of this qualification, the deprivation Bolyard claims she suffers appears less extreme. For Bolyard to demonstrate that, despite this qualification, the condition remains a deprivation "greater than reasonably necessary," she would need to show that she has exhausted all possible remedies, including *either* a summary denial from her probation officer *or* permission from her probation officer to access the computer/internet but it is still not feasible to perform the duties of an "office" or "sales" job at her place of employment. Bolyard has not made such showing nor demonstrated she has suffered an actual deprivation here. Thus, the court will deny Bolyard's request without prejudice.

## IV. Conclusion

The court has discretion in determining whether to terminate a supervised release before its expiration. Here, the court has considered the briefs, the record, and the relevant factors established in § 3553(a) and finds that Bolyard has not yet completed her sex offender treatment, it is unclear whether Bolyard has been fully compliant with all release conditions, and the termination of her supervised release at this time would not be in the "interest of justice." With respect to Bolyard's request for modification of certain release conditions, the court finds that Bolyard has demonstrated the "association with minors" condition should be modified to except her son and stepdaughter from that condition, but she has failed to demonstrate on the record presented here that her internet-use restriction should be modified or removed.

Accordingly, the motion is DENIED IN PART, GRANTED IN PART, AND DENIED WITHOUT PREJUDICE IN PART. The court will not grant an early termination of Bolyard's supervised release nor, at this time, modify the internet-use condition (or other related computer-based conditions), but DIRECTS the Clerk of the Court to prepare and file an Amended Judgment modifying the "association with minors" condition (*see infra* at 9) by adding the following: "This condition shall not apply with respect to Bolyard's son, Waylon S. Bolyard, or stepdaughter, Peyton A. Santiago."

SO ORDERED this 11th day of July, 2023.

Richard E. Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE